USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MY GOALS SOLUTIONS, INC., <br><br> Plaintiff, <br><br> -against- <br><br> EMMANUELLA COIANA, JOHN DOES 1-15, and BUSINESS ENTITIES A-J, <br><br> Defendants. | 1:24-cv-01900-MKV <br><br> **OPINION AND ORDER GRANTING MOTION TO DISMISS** |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff My Goals Solutions, Inc. ("My Goals" or "Plaintiff") filed a complaint against Defendant Emmanuella Coiana and several fictitious defendants, invoking diversity jurisdiction and asserting claims for tortious interference with a contract and prospective economic advantage, trade libel and libel *per se*, and fraud by omission. Defendant Coiana moves to dismiss the operative amended complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), for improper venue pursuant to Rule 12(b)(3), and for failure to state a claim pursuant to Rule 12(b)(6). For the reasons below, the motion to dismiss is GRANTED.

## FACTUAL BACKGROUND[1]

Plaintiff My Goals is a medical management company, with a principal place of business in New York City, that provides administrative services for medical practices that do business under the Trademark "Goals Aesthetics and Plastic Surgery." FAC ¶ 8. In June of 2021, My Goals hired Defendant Emmanuella Coiana, a resident of Florida, as a patient coordinator. FAC

---

[1] The facts as stated herein are drawn from Plaintiff's First Amended Complaint [ECF No. 16] ("FAC"), and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

¶¶ 9, 14.  Coiana was expected to work from the office My Goals was planning to open in Miami.  FAC ¶¶ 14, 15.  As a patient coordinator, Coiana arranged cosmetic surgery procedures for patients at My Goals' medical practices in New York, Georgia, and Maryland.  FAC ¶ 14.

Before Coiana was hired, My Goals provided her with proposed terms and conditions of her employment, which was never signed.  FAC ¶ 16.  Those proposed terms included the following provision: "[t]his Agreement shall be construed and governed pursuant to the Laws of the State of New York except as to wage payment laws which shall be subject to the Laws of the Florida."  FAC ¶17; [ECF No. 21 ("Pl. Opp.") at 18].  The proposed terms also included an arbitration clause which designated that disputes should be resolved in New York.  Pl. Opp. at 13.

During her employment, Coiana suggested that My Goals arrange for illegal procedures whereby foreign-trained surgical technicians would perform procedures on patients, in the name of a licensed physician.  FAC ¶¶ 20–21.  Coiana suggested that My Goals do these procedures in all My Goals offices, including those in New York.  FAC ¶ 20.  My Goals rejected Coiana's suggestion several times.  FAC ¶¶ 22–23.  Nevertheless, in January of 2024, Coiana arranged for surgical technicians to perform procedures at My Goals' facilities.  FAC ¶ 31.  After My Goals learned of the purportedly illegal procedures, it began an investigation and Coiana told the My Goals management team in New York that the suspect procedures had occurred.  FAC ¶¶ 32–34.  After an investigation, My Goals determined that Coiana arranged illegal medical procedures and fired her with cause.  FAC ¶ 36.

After her termination, Coiana filed a complaint with the Department of Health of the State of Florida asserting that the non-doctor procedures were directed by My Goals from New York.  FAC ¶¶ 37, 52.  Coiana also contacted several employees of My Goals via text message, including

2

employees based in New York, stating that My Goals acted in an illegal manner and making other allegedly false and negative statements. FAC ¶ 40.

Additionally, Coiana contacted a person identified as Dr. 1 in the Amended Complaint. FAC ¶ 49. Dr. 1 has been an employee of My Goals since February of 2021, performing plastic and cosmetic surgeries at affiliated My Goals facilities in the Bronx and Brooklyn. FAC ¶¶ 12–13, 26. While his primary obligations were in the Bronx facility, Dr. 1 also performed surgeries in My Goals facilities in Georgia and Florida. FAC ¶¶ 29–30. Dr. 1 is party to a contract between My Goals and "Dr. James R. Lyons' Trademarked practice" regarding his work for My Goals in New York. FAC ¶ 13.[2]

After her termination in 2024, Coiana offered Dr. 1, who was in New York at the time, the opportunity to work at a cosmetic surgery office where Coiana would arrange for him to participate in purportedly illegal surgeries without doctors. FAC ¶ 49. Coiana allegedly convinced Dr. 1 to terminate his agreements with My Goals. FAC ¶ 49. Dr. 1 thereafter notified My Goals that he intended to cancel his contract without cause. FAC ¶ 42. At the time, Dr. 1 and My Goals principals were negotiating their continued business relationship. FAC ¶ 43. My Goals principals believed that Dr. 1 threatened to terminate his agreements as a negotiation tactic to increase his compensation. *Id.* Dr. 1 ultimately continued working with My Goals. FAC ¶ 67. My Goals claims that, though Dr. 1 continued to work for My Goals, his termination notice alone caused My Goals damages, including the cost of hiring replacement medical providers and negotiating higher pay for Dr. 1. FAC ¶¶ 50–52, 67.

---

[2] The Amended Complaint makes conflicting allegations about the contractual relationship between Dr. 1 and My Goals. At times the Amended Complaint refers to a single relevant contract including My Goals and Dr. 1 and at other times refers to several relevant contracts between these two parties. FAC ¶¶ 1, 4, 11, 13, 42, 49, 64.

3

Finally, Coiana called and texted a person identified as Employee 2 in the Amended Complaint. FAC ¶ 45–46. Coiana encouraged Employee 2 to stop working for My Goals. FAC ¶ 45. Coiana also relayed to Employee 2 that Dr. 1 had given his final notice to My Goals and asked repeatedly about whether an inspection had been conducted at an unspecified My Goals office. FAC ¶¶ 46–47.

The Amended Complaint rather confusingly alleges that "throughout this period of time"—apparently after her termination when she was contacting My Goals employees—Coiana was "falsely and fraudulently advising Plaintiff, by contacting them in New York, that she was performing pursuant to her duty of loyalty to Plaintiff" and instead was directing potential patients to obtain procedures elsewhere and "attempting to undermine Plaintiff in New York in the global plastic surgery market." FAC ¶ 54. Plaintiff provides no further explanation of the duty of loyalty Coiana allegedly had to My Goals after her termination or how Coiana continued to advise My Goals after her termination.

## PROCEDURAL HISTORY

In response to the complaint filed by My Goals, [ECF No. 1 ("Complaint")], Defendant filed a motion to dismiss, which the Court denied without prejudice as procedurally improper. [ECF Nos. 11–13]. With leave of the Court, Plaintiff filed an Amended Complaint, [ECF No. 16 ("Amended Complaint" or "FAC")], which Defendant moved to dismiss. [ECF No. 20] ("Def. Mem."). My Goals filed a memorandum of law in opposition to the motion to dismiss. [ECF No. 21 ("Pl. Opp.")].[3] Defendant did not file a reply. For the reasons below, the Court dismisses this case without prejudice.

---

[3] Plaintiff's Opposition is riddled with *ad hominem* attacks on opposing counsel and grand statements about the nature of litigation. *See* Pl. Opp. at 7–11 (making claims about "one of the most unfortunate aspects of this current era," stating "perhaps Defendant's counsel does not recognize that the Supreme Court in New York is the trial level," calling Defendant's memorandum a "meandering diatribe," and pontificating that "[i]t seems that, in perpetuity,

**LEGAL STANDARD**

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant. *See Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012); *see also In re Terrorist Attacks*, 714 F.3d 659, 673 (2d Cir. 2013). To make a *prima facie* showing of personal jurisdiction, a plaintiff "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)

In assessing personal jurisdiction, the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). Still, the Court cannot "draw argumentative inferences in the plaintiff's favor" and need not accept conclusory legal statements. *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013).

It is well settled that, in deciding a motion to dismiss a complaint for want of personal jurisdiction, the Court may consider materials outside the pleadings. *Fleming v. ISCO Indus., Inc.*, 750 F. App'x 62, 63–64 (2d Cir. 2019) (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) ("[W]e have made clear that a district court may [consider materials outside the pleadings] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment.")). Accordingly, facts asserted in both a complaint and an opposition to a motion to dismiss are assumed to be true for purposes of evaluating jurisdiction at

---

litigants will fight over the constitutional aspects of personal jurisdiction, even when clearly applicable."). Plaintiff's counsel would be well-advised to stick to the relevant legal arguments and to be mindful of professional civility.

the pending stage. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 56–57 (2d Cir.1985)).

There are three traditional bases for the exercise of personal jurisdiction over a defendant. First, a court may exercise general jurisdiction over a defendant that is "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Second, a court may exercise "specific or conduct-linked jurisdiction" where there is a sufficient link between the defendant's conduct in the forum and the conduct at issue in the case. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Third, a defendant can consent to the exercise of personal jurisdiction. *See J. McIntyre Mach., Ltd. v. Nicasto*, 564 U.S. 873, 880 (2011) (plurality opinion); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). In all cases, the exercise of personal jurisdiction must comport with fundamental notions of due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014).

## DISCUSSION

Plaintiff asserts that Defendant is subject to both general jurisdiction in New York and specific jurisdiction in New York pursuant to Section 302(a)(2) of New York's long-arm statute. *See* Pl. Opp. at 10–11, 17–18. Plaintiff fails to make a *prima facie* case under either theory.

I.     **Plaintiff Fails to Establish General Jurisdiction**

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014)) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014); *Magdalena v. Lins*, 999 N.Y.S.2d 44, 45 (1st Dep't. 2014). The Supreme Court made clear in *Daimler* that, "as a rule, it is not constitutionally permissible to sue an individual or corporation in a state where that individual is

6

not "'at home' ... [and that] [a]n individual is 'at home' in the state of his domicile." *Meyer v. Bd. of Regents of Univ. of Oklahoma*, No. 13 CIV. 3128 CM, 2014 WL 2039654, at *2 (S.D.N.Y. May 14, 2014) (citing *Daimler*, 571 U.S. at 137 (2014)).  An individual "may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004).  Here, Plaintiff concedes that Defendant is a resident of Florida, and does not allege that Defendant is domiciled in New York. *See* FAC ¶ 9.

Nevertheless, Plaintiff argues that this Court has general jurisdiction over Defendant on two grounds.  First, Plaintiff alleges that since Coiana's hiring in mid-2021, she had "continuous and systematic contacts with New York" as she "regularly was communicating with New York (including individuals in New York) regarding the [My Goals'] business."  Pl. Opp. at 18.  Second, Plaintiff alleges Coiana was on notice that New York was a proper jurisdiction for disputes due to the presence of a forum selection clause in her unsigned employment agreement.  Pl. Opp. at 18. Neither argument establishes a *prima facie* showing of general jurisdiction.

First, Defendant's communications with people in New York are insufficient to establish general jurisdiction.  The Second Circuit has acknowledged that there may be an "exceptional case" in which an individual defendant's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, but it has not yet found such a case.  *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *Owens v. Ronemus*, No. 23 CIV. 3036 (PGG), 2024 WL 3105605, at *5 (S.D.N.Y. June 24, 2024), *appeal dismissed* (Nov. 26, 2024).  This is not an exceptional case.

Plaintiff alleges that Coiana regularly communicated with people in New York while acting as an employee of a New York-based company, and that after her termination, Coiana made an

7

unspecified number of calls and text messages to people in New York. FAC ¶¶ 14, 23, 25, 34, 40, 49, 53, 54, 70, 76, 77; Pl. Opp. at 18. Plaintiff does not allege that Coiana has ever stepped foot in New York. The alleged contacts with New York are clearly insufficient to render non-domiciliary Coiana "at-home" in New York. In fact, Courts in this Circuit have found that individuals not domiciled in New York with more significant ties to this state were not subject to general jurisdiction. *See Owens v. Ronemus*, No. 23 CIV. 3036 (PGG), 2024 WL 3105605, at *7 (S.D.N.Y. June 24, 2024), *appeal dismissed* (Nov. 26, 2024) (finding a non-domiciliary not subject to general jurisdiction even though he is a member of the New York bar and is a partner in a law firm headquartered in New York); *Reich*, 858 F.3d at 63 (finding a non-domiciliary not subject to general jurisdiction where he had business relationships in New York, owned apartment in New York, and spent small percentage of nights in New York); *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 520 (E.D.N.Y. 2017) (finding a non-domiciliary not subject to general jurisdiction where Defendant traveled to New York nine to twelve times each year in a twelve year period). Defendant's communications with people in New York are grossly insufficient to establish general jurisdiction here.

Moreover, the majority of Coiana's alleged contacts with New York are contacts she made as an employee of My Goals. "[W]here an individual defendant is acting on behalf of a corporation, he does not subject himself to [general jurisdiction in New York]." *MMA Fighter Mgmt., Inc. v. Ballengee Grp., LLC*, No. 19 CIV. 11276 (AKH), 2020 WL 3000401, at *3 (S.D.N.Y. June 4, 2020) (quoting *San Diego Cty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 117 (S.D.N.Y. 2010)).

Finally, contrary to Plaintiff's argument, the unexecuted employment agreement provided to Defendant by Plaintiff does not confer general jurisdiction over the Defendant. Plaintiff alleges

that, before hiring Coiana, My Goals provided her with proposed terms and conditions of her employment in a proposed agreement, which was never signed. FAC ¶ 16. Those proposed terms included the following provision: "[t]his Agreement shall be construed and governed pursuant to the Laws of the State of New York except as to wage payment laws which shall be subject to the Laws of the Florida." FAC ¶17; [ECF No. 21 ("Pl. Opp.") at 18].[4] The proposed terms also included an arbitration clause which designated that disputes should be resolved in New York.[5] Pl. Opp. at 13. Plaintiff argues that "the lack of execution of the agreement deprives both sides of certain contractual rights[; however, the unexecuted agreement] shows an intent to apply New York law and shows that the Defendant knew that it was doing business and was in contact with New York." *Id.* at 18. Tellingly, Plaintiff cites no authority for the proposition that a forum selection clause or an arbitration clause in an unexecuted contract renders a defendant "at home" in a state. As explained above, Coiana's contacts with New York made on behalf of her employer are irrelevant to the analysis of general jurisdiction, and regardless her knowledge that she would have such contacts would be insufficient to render her at-home in New York when she is a resident of Florida. *See Reich*, 858 F.3d at 63; *MMA Fighter Mgmt.*, 2020 WL 3000401, at *3.

Plaintiff does not argue that the unexecuted employment agreement demonstrates that Coiana consented to jurisdiction in New York. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) ("The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss."). Even if

---

[4] This provision is referenced but not quoted in the Amended Complaint. FAC ¶ 17. It is quoted for the first time in the Plaintiff's Opposition. *See* Pl. Opp. at 18. The Court only considers this quotation in the context of its analysis of personal jurisdiction, in which the Court may consider materials outside the pleadings. *See, e.g.*, *Fleming v. ISCO Indus., Inc.*, 750 F. App'x 62, 63–64 (2d Cir. 2019) (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

[5] These allegations are first mentioned in the Plaintiff's Opposition and are considered only in the context of personal jurisdiction for the reasons stated above.

Plaintiff had so argued, the Complaint does not allege sufficient facts to suggest that Coiana has consented to general jurisdiction in New York. First, the employment "agreement" is arguably not enforceable because, by Plaintiff's own allegations, Coiana did not sign it. FAC ¶ 16–17; *see also Merrill Lynch Cap. Servs., Inc. v. Prairie Pride, Inc.*, No. 10 CIV. 5223 DAB, 2011 WL 1044887, at *2 (S.D.N.Y. Mar. 10, 2011) (finding a forum selection clause in an unexecuted agreement is unenforceable); *Bank of America, N.A. v. Hensley Properties, LP*, 495 F. Sup.2d 435 (S.D.N.Y.2007) (declining to enforce a forum selection clause in an unsigned agreement). Regardless, Plaintiff has not alleged enough to demonstrate an applicable and enforceable forum selection clause. Plaintiff alleges only that "the Terms and Conditions of Employment indicated that . . . any disputes were to be addressed in New York, New York" in arbitration. Pl. Opp. at 13. Without including the language of the forum selection clause, the Court cannot determine—as it must in order to enforce a forum selection clause—whether the clause is mandatory or permissive or whether the forum selection clause is drafted broadly enough to cover the conduct alleged here, most of which happened after Coiana was fired. *See Idle Media, Inc. v. Create Music Grp., Inc.*, No. 24-CV-00805 (JLR), 2024 WL 5009713, at *7 (S.D.N.Y. Dec. 6, 2024) ("To determine whether there is an enforceable forum selection clause, courts in this Circuit consider the following factors: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, for example, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.") (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (same)).[6]

      Accordingly, Plaintiff fails to establish general jurisdiction over Coiana.

---

[6] Significantly, neither party urges the Court to compel arbitration of their dispute.

II.  **Plaintiff Fails to Establish Specific Jurisdiction**

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis to determine whether there is specific jurisdiction over the defendant. First, the Court must determine whether the law of the forum state, here, New York's long-arm statute, would subject the Defendant to personal jurisdiction. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). If New York law would permit the exercise of jurisdiction over the Defendant, the Court must also evaluate whether the exercise of jurisdiction would comport with due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

Specific jurisdiction requires that a defendant "purposefully avail[ ] itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). The Court begins to analyze personal jurisdiction by determining whether the law of the forum state, here — New York's long-arm statute, N.Y. C.P.L.R. § 302 — subjects the defendant to personal jurisdiction. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

In the Amended Complaint, Plaintiff does not make any statement regarding its theory of personal jurisdiction. *See* FAC. Defendant argued in her motion to dismiss that Plaintiff could not establish specific jurisdiction over her pursuant to Section 302(a)(1) of the New York long-arm statute. Def. Mem. at 3–4. In its opposition, Plaintiff does not address Section 302(a)(1) of the statute and instead argues only that Section 302(a)(2) confers specific jurisdiction over Defendant with respect to its claims. *See* Pl. Opp. 10–11. Plaintiff made no effort to argue that the Court could exercise jurisdiction over Defendant based on any subsection of the New York long-arm

11

statute other than Section 302(a)(2). *See id.* Accordingly, the Court deems Plaintiff to have abandoned arguments pursuant to any other statutory subsection.[7] Moreover, Plaintiff only asserts jurisdiction pursuant to Section 302(a)(2) with respect to its tortious interference claim and makes no attempt to tie either its libel or fraud claims to any section of the long-arm statute. *See* Pl. Opp. 10–11.

Section 302(a)(2) provides that a Court has personal jurisdiction over a defendant in New York who "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." N.Y. C.P.L.R. 302(a)(2). Plaintiff asserts specific jurisdiction over Defendant with respect to only *one* of its claims. Specifically, Plaintiff argues Coiana is subject to jurisdiction under Section 302(a)(2) of New York's long-arm statute with respect to its claim of tortious interference. Pl. Opp. at 10. Plaintiff asserts in its brief that this Court has jurisdiction as "this is a matter seeking redress for a tort, which took place in New York, relating to a New York contract." Pl. Opp. at 11. Plaintiff then attempts to assert that this section of the long-arm statute confers specific jurisdiction over the entire case because Plaintiff's "first cause

---

[7] A plaintiff "bears the burden" of establishing personal jurisdiction over the defendant when responding to a Rule 12(b)(2) motion to dismiss. *See, e.g.*, *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Accordingly, Courts regularly consider plaintiffs' failure to raise certain sections of the New York long-arm statute in their opposition to a motion to dismiss for lack of personal jurisdiction as a waiver of such arguments. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 399 (S.D.N.Y. 2021) ("[T]he Court considers Plaintiffs to have abandoned all bases for personal jurisdiction other than CPLR 302(a)(3)(ii). . . Plaintiffs made no effort to argue that the Court could exercise jurisdiction over Defendants based on CPLR 302(a)(1) & (2), instead inviting the Court to do their job for them."); *Bank of New York Mellon v. SACE S.p.A*, No. 10 CIV 2510 RMB, 2011 WL 102728, at *3 (S.D.N.Y. Jan. 6, 2011) ("Plaintiff fails to address this ground for jurisdiction (CPLR § 301) in its memorandum of law, . . . and the Court considers it waived by Plaintiff."); *Kennedy Johnson Gallagher, LLC v. Payne*, No. 10 CIV 1363, 2010 WL 3958749, at *2 (S.D.N.Y. Oct. 5, 2010) ("Plaintiff fails to address this ground for jurisdiction in their memorandum of law, and the Court considers it waived by Plaintiff."); *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392–93 (S.D.N.Y.), *on reconsideration*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002), and *aff'd sub nom. First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ("[P]laintiffs fail to address [Section 301 of New York's CPLR] for jurisdiction in their memorandum of law, and the Court considers it waived."); *AMPA Ltd. v. Kentfield Cap. LLC*, No. 00 CIV 0508 NRB, 2001 WL 204198, at *2 n.3 (S.D.N.Y. Mar. 1, 2001) (granting motion to dismiss after addressing only the two subsections of CPLR 302 that Plaintiff asserted); *see generally Fair Hous. Just. Ctr., Inc. v. Cuomo*, No. 18-CV-3196 (VSB), 2019 WL 4805550, at *16 (S.D.N.Y. Sept. 30, 2019) (quoting *Norton v. Sams Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived[.]").

of action is for tortious interference with a New York contract." *See* Pl. Opp. at 10. Plaintiff's attempt fails. No case stands for this proposition. Section 302(a) begins by expressly limiting its reach: "As to a cause of action arising from any of the acts enumerated in this section . . ." N.Y. C.P.L.R. 302(a). As such, My Goals can establish specific jurisdiction only by tying purposeful activity within the meaning of Section 302(a)(2) with respect to a specific claim. *See Berdeaux*, 561 F. Supp. 3d at 396.

With respect to the tortious interference claim—the only cause of action with respect to which Plaintiff alleges Defendant has ties to New York—Plaintiff fails to make a *prima facie* showing of jurisdiction under Section 302(a)(2). Plaintiff does not allege Defendant ever stepped foot in New York, let alone committed any tortious acts in New York. Section 302(a)(2) states a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: "commits a tortious act within the state . . . except as to a cause of action for defamation of character arising from the act." C.P.L.R. § 302(a)(2). Section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act," or who committed the tortious act within the state "through an agent." *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28–29 (2d Cir. 1997); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789–90 (2d Cir. 1999) ("At minimum, to qualify for jurisdiction under this subsection, a defendant's act or omission must have occurred within the State.") (quotation marks and brackets omitted); *Carlson v. Cuevas*, 932 F. Supp. 76, 80 (S.D.N.Y. 1996) ("To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State."). Plaintiff conclusorily states that the tortious interference "took place in New York, related to a New York contract." Pl. Opp.

at 11. But Plaintiff does not establish, as it must, that Coiana was physically in New York when committing the any allegedly tortious act.[8]

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. The Court dismisses this case without prejudice.[9] The Clerk of Court is respectfully requested to terminate docket entry 16 and close this case.

**SO ORDERED.**

**Dated: New York, NY**
   **March 14, 2025**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[8] Moreover, Section 302(a)(2) expressly excludes from its reach causes of action for defamation. *See, e.g., Mirza v. Dolce Vida Med. Spa, LLC*, No. 19 CIV. 6444 (PGG), 2024 WL 307969, at *5 (S.D.N.Y. Jan. 26, 2024). As such, even if Plaintiff had attempted to assert personal jurisdiction pursuant to Section 302(a)(2) relating to Plaintiff's libel claim, the Court could not do so.

[9] The Court declines to grant a leave to amend for several reasons. First, Plaintiff was granted an opportunity to amend its initial complaint in response to issues raised in Defendant's initial pre-motion letter requesting a motion to dismiss for lack of personal jurisdiction. [ECF Nos. 8–10]. Plaintiff took that opportunity and did not remedy the defects as described above. *See* FAC. Second, Plaintiff did not request leave to amend in its opposition to the pending motion to dismiss, *see* Pl. Opp., and consequently has not demonstrated to the Court that the opportunity to amend would not be futile. *See, e.g., Treiber v. Aspen Dental Mgmt.*, Inc., 635 F. App'x 1, 4 (2d Cir. 2016).